Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA HENRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>    vs.<br><br>EZ CHOICE FINANCIAL CORP. and DOES 1-10,<br><br>Defendant(s). | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>1.  VIOLATIONS OF ELECTRONIC FUNDS TRANSFER ACT<br>2.  VIOLATION OF CALIFORNIA FALSE ADVERTISING ACT<br>3.  VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES ACT<br>4.  VIOLATIONS OF FAIR CREDIT REPAIR ORGANIZATION ACT<br>5.  VIOLATION OF THE CALIFORNIA CREDIT SERVICES ACT<br>6.  VIOLATION OF CAL. CIV. CODE § 1670.8<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SANDRA HENRY ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following against Defendant EZ CHOICE FINANCIAL CORP. upon information and belief based upon personal knowledge:

## **INTRODUCTION**

1.    Plaintiff's Class Action Complaint is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 et seq. ("EFTA"). Plaintiff, furthermore, brings this Class Action under the California False Advertising Act ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; California Unfair Business Practices Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and the Federal Credit Repair Organizations Act ("FCROA"), 15 U.S.C. §§ 1679 et seq.; the California Credit Services Act, Cal. Civ. C. § 1789. 11 et. seq. ("CCSA"), and Cal. Civ. Code §1670.8.

2.    Plaintiff, individually, and on behalf of all others similarly situated, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants debiting Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b). Plaintiff, moreover, and on behalf of all others similarly situated, brings this Complaint for damages and injunctive relief, in order to stop Defendant's continued false advertisement of providing a money back guarantee for their service, when in fact, they refuse to return any monies paid to them for their services; and to stop Defendant's gathering of payments for credit repair services prior to actually rendering any services to consumers.

3.    Furthermore, Plaintiff also brings this action for damages and

injunctive relief in order to stop Defendant's threats and demands of Plaintiff to cease utilizing her first amendment rights to state her opinion and experience, while interaction with Defendant, under Cal. Civ. Code §1670.8, *et seq.*

4.      Plaintiff alleges as follows upon personal knowledge as to herself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. 1331, because this action is brought pursuant to the EFTA, 15 U.S.C. 1693 *et seq.*, and pursuant to the FCROA, 15 U.S.C 1697 *et seq*.

6.      Jurisdiction of this Court arises pursuant to 15 U.S.C. 1693(m), which states that, "without regard to the amount in controversy, any action under this section may be brought in any United States district court."

7.      Alternatively, jurisdiction is proper because this action is brought under Federal Statutes, and all California State Law claims are ancillary thereto pursuant to 28 U.S.C. § 1367(a).

8.      Venue and personal jurisdiction in this District are proper pursuant to 28 U.S.C. 1391(b) because Defendant does or transact business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

9.      Plaintiff, SANDRA HENRY ("Plaintiff"), is a natural person residing in Washington County in the state of Oregon, and is a "consumer" as defined by 15 U.S.C. §1693a(6).

10.     At all relevant times herein, DEFENDANT, EZ CHOICE FINANCIAL CORP. ("Defendant"), is credit repair organization that sells, provides, and performs services for the payment of money for the express or implied purpose of improving any consumer's credit record, credit history, or

credit rating, and uses an instrumentality of interstate commerce and the mail to do so as defined by 15 U.S.C. § 1679(a)(3).

11.     The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

12.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS - EFTA

13.     Prior to May of 2017, Plaintiff entered into an agreement with Defendant, whereby Defendant would deduct funds from Plaintiff's account on a reoccurring basis. However, in or around October of 2017, Plaintiff canceled this service. Despite this, Defendant continued to deduct funds from Plaintiff's account multiple times on a reoccurring basis, without Plaintiff's consent or authorization.

14.     Defendant's automatic withdrawals caused an overdraft on Plaintiff's bank account, causing her actual injury in the forms of additional fees.

15.     Plaintiff never provided Defendant with any authorization to deduct these sums of money on a regular recurring basis from Plaintiff's banking account

after the cancellation of the service.

16. Defendants continued to deduct this monthly sum from Plaintiff for several months without Plaintiff's authorization.

17. Additionally, Defendants did not provide to Plaintiff, nor did Plaintiff execute, any written or electronic writing memorializing or authorizing these recurring or automatic payments in the first instance.

18. Plaintiff alleges such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

## FACTUAL ALLEGATIONS – FAL, FCROA, CCSA, and Cal. Civ. Code §1670.8

19. On or around May of 2017, Plaintiff purchased from Defendant credit repair services.

20. Defendant represented to Plaintiff that their service can repair the derogatory information on Plaintiff's credit report, in exchange for valuable consideration from Plaintiff. Defendant further represented a money back guarantee if Defendant cannot repair Plaintiff's credit with their service.

21. For Defendant's service, Plaintiff paid more than valuable consideration. Under the terms of the agreement, Plaintiff was to pay at most a total of $1,497.00 for credit repair services.

22. Defendant required Plaintiff to pay for an evaluation fee of $297, included with the total cost of services above, prior to Defendant beginning any work pertain to the repair of Plaintiff's credit. In doing so, Defendant charged and received money prior to the full and complete performance of the services it had agreed to perform on behalf of Plaintiffs, including any initial setup.

23. In reliance on Defendant's representations, namely that Defendant would guarantee that it will be able to improve Plaintiff's credit or Plaintiff will

receive her money back, Plaintiff purchased the credit repair services from Defendant.

24.    After several months passed without any improvement to her credit score, Plaintiff sought to cancel the services and obtain a refund.

25.    Defendant refused to return Plaintiff's funds and stated that there is no money back guarantee for their services.

26.    Defendant does not inform consumers, including Plaintiff, that Defendant will not refund any of the monies paid by consumers, such as Plaintiff, under their money back guarantee.

27.    Defendant's knowledge of the fact that Plaintiff and similarly situated consumers could not reap the benefits of the warranty is demonstrated by the fact that when Plaintiff attempted to apply for a money back guarantee, Defendant refused to honor her request.

28.    Defendant omitted from its advertisements and contracts that consumers who purchase their services will not be able to obtain a money back guarantee when Plaintiff, or a similarly situated consumer, apply for it.

29.    Plaintiff had no reasonable way of knowing nor had a reasonable opportunity to find out that Defendant would not honor the warranty.

30.    Defendant was aware that Plaintiff could not have reasonably known that it would not honor their guarantee.

31.    Had Plaintiff known that Defendant would not honor their guarantee, Plaintiff would not have purchased the credit repair services from Defendant, rather, Plaintiff would have considered purchasing credit services from a different retailer.

32.    Plaintiff was significantly upset by Defendant's refusal to honor its guarantee as advertised.

33.    Such sales tactics employed on Defendant rely on falsities and have a

tendency to mislead and deceive a reasonable consumer.

34.    Plaintiff is informed, believes, and thereupon alleges that such representations were part of a common scheme to mislead consumers and incentivize them to purchase services from Defendant.

35.    Plaintiff reasonably believed and relied upon Defendant's representations in its advertisement.

36.    Plaintiff materially changed her position in reliance on Defendant's representations and was harmed thereby.

37.    Plaintiff would not have purchased the credit repair services or any similarly advertised service had Defendant disclosed that it would not honor its guarantees.

38.    Had Defendant properly marketed, advertised, and represented that it would not honor guarantees stated in its advertisements, Plaintiff would not have purchased the credit repair services or any similarly advertised service.

39.    Defendant benefited from falsely advertising and representing the benefits of its service. Defendant benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

40.    Furthermore, in or around November of 2017, Plaintiff posted a complaint, regarding Defendant's services and actions, on the review website, www.Yelp.com ("Yelp").

41.    Defendant responded to Plaintiff, on or around December of 2017, through Defendant's counsel, demanding to remove the post and threatening Plaintiff with legal action if her review was not removed from Yelp.

42.    Defendant violated Cal. Civ. Code § 1670.8(b) by threatening Plaintiff with civil action for making statements regarding the consumer service she purchased from Defendant.

///

# **CLASS ACTION ALLEGATIONS**

43.    Plaintiff brings this action, on behalf of herself and all others similarly situated, and thus seeks class certification under Federal Rules of Civil Procedure, Rule 23.

44.    The class Plaintiff seeks to represent (the "EFTA Class") is defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

45.    Plaintiff also seeks to represent the following class (the "Credit Repair Organization Class"):

> All persons in the United States who, from five years prior to the filing of the Complaint to the present, entered into an agreement for Credit Repair Services with Defendant.

46.    Plaintiff also seeks to represent the following class (the "FAL Class"):

> All consumers in the state of California, who, between the applicable statute of limitations and the present, purchased or attempted to purchase credit repair services with a money back guarantee from Defendant, and did not obtain their money back after canceling the service.

47.    The EFTA Class, the Credit Repair Organization Class; and the FAL Class will be collectively referred to as "The Classes."

48.    Plaintiff represents, and is a member of, The Classes, consisting of all persons within the United States whose bank account was debited on a recurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

49.    Defendants, their employees and agents are excluded from The Classes.  Plaintiff does not know the number of members in The Classes, but believes the Classes members number in the hundreds, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

50.    The Classes are so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of The Classes members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that The Classes includes hundreds, if not thousands, of members.  Plaintiff alleges that The Classes members may be ascertained by the records maintained by Defendants.

51.    This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes is so numerous that joinder of the Classes members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.

52.    There are questions of law and fact common to the Classes affecting the parties to be represented.  The questions of law and fact to the Classes predominate over questions which may affect individual Class members and include, but are not necessarily limited to, the following:

    a.    Whether the members of the Classes were not provided with, nor did they execute, written agreements memorializing the automatic or recurring electronic payments;

    b.    Whether Defendants did not request, nor did it provide, Class members with written agreements memorializing the automatic or recurring electronic payments;

    c.    Whether the members of the Classes did not provide either a written

("wet") or otherwise electronic signature authorizing the automatic or recurring electronic payments;

d. Whether, despite not providing written or electronic authorization for payments to be drawn from their accounts, Defendants took unauthorized payments from Class members' accounts;

e. Whether Defendants engaged in unlawful, unfair or deceptive business practices in selling their credit repair services to the members of the Classes;

f. Whether Defendants misrepresented their money back guarantee with respect to the credit repair services sold to consumers;

g. Whether Defendants charged the Credit Repair Organization Class Members prior to providing any services;

h. Whether Defendant violated California Bus. & Prof. Code § 17500 et seq., 15 U.S.C. § 1679, et seq.; and 15 U.S.C. § 1693, et seq.;

i. Whether Plaintiffs and Class Members are entitled to equitable and/or injunctive relief;

j. Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and Class Members; and

k. The method of calculation and extent of damages for Plaintiffs and Class Members

53. As someone whose bank account was debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, was denied a money back guarantee for the credit repair service she purchased, and was charged prior to the provision of Credit Repair services, Plaintiff is asserting claims that are typical of The Classes.

54. Plaintiff will fairly and adequately protect the interests of the members

of The Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions.

55.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

56.    The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Classes not parties to such adjudications or that would substantially impair or impede the ability of such non-party members of the Classes to protect their interests.

57.    Defendants have acted or refused to act in respects generally applicable to The Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

58.    The size and definition of the Classes can be identified through Defendant's records and/or Defendant's agents' records.

## <u>CAUSES OF ACTION</u>
### <u>COUNT I:</u>
### <u>VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT</u>
**(15 U.S.C. §§ 1693, *et seq.*)**
**-On Behalf of Plaintiff and the EFTA Class-**

59.    Plaintiff reincorporates by reference all of the preceding paragraphs.

60.    Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

61.    Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

62.    Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p ]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

63.    Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

64.    In multiple instances, Defendants have debited Plaintiff's and also the putative EFTA Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's and also the putative EFTA Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

65.    Additionally, after Plaintiff and putative EFTA Class members explicitly revoked consent and authorization for auto-debiting, if any existed,

Defendants continued to debit Plaintiff's and also the putative EFTA Class members' bank accounts on a recurring basis without authorization.

## COUNT II:
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING ACT
### (California Bus. & Prof. Code §§ 17500, *et seq.*)
### -On Behalf of Plaintiff and the FAL Class-

66.    Plaintiff incorporates by reference each allegation set forth above as fully set forth herein.

67.    Pursuant to California Business and Professions Code section 17500, et seq., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . [or] to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

68.    California Business and Professions Code section 17500, et seq.'s prohibition against false advertising extends to the use of false or misleading written statements.

69.    Defendant misled consumers by making misrepresentations and untrue statements about their services, namely, Defendant marketed and sold a credit repair service with a money back guarantee that was of a nature and quality different than advertised, and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

70.    Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff.

71.    As a direct and proximate result of Defendant's misleading and false

advertising, Plaintiff has suffered injury in fact and have lost money or property, time, and attention.  Plaintiff reasonably relied upon Defendant's representations regarding their credit repair service. In reasonable reliance on Defendant's false advertisements, Plaintiff purchased the credit repair service.  In turn Plaintiff and ended up with services that were different in ways that caused them to suffer emotional distress and economic harm, and therefore Plaintiff has suffered injury in fact.

72.    Plaintiff alleges that these false and misleading representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

73.    Defendant advertised to Plaintiff, through written representations and omissions made by Defendant and its employees that the credit repair service would be of a particular nature and quality.

74.    Thus, Defendant knowingly sold a product to Plaintiff.

75.    The misleading and false advertising described herein presents a continuing threat to Plaintiff in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease its false advertising, as well as disgorgement and restitution to Plaintiff Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

///

///

///

///

## COUNT III:
## VIOLATION OF THE UNFAIR BUSINESS PRACTICES ACT
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
### -On Behalf of Plaintiff and the FAL Class-

76.    Plaintiff incorporates by reference each allegation set forth above as fully set forth herein.

77.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendants' business practices and the alleged harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

78.    California Business & Professions Code § 17200 prohibits any "unfair . . . business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this

date.

79.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and (3) is not one that consumers themselves could reasonably have avoided.

80.    Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and the FAL Class members.  Plaintiff and the FAL Class members have suffered injury in fact due to Defendant's decision to sell them falsely described credit repair services. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the FAL Class.

81.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the FAL Class that the credit repair services included a money back guarantee in order to induce them to spend money on said service. In fact, knowing that credit repair service was not of this nature and quality, Defendant unfairly profited from their sale. Thus, the injury suffered by Plaintiff and the members of the FAL Class is not outweighed by any countervailing benefits to consumers.

82.    Finally, the injury suffered by Plaintiff and members of the FAL Class is not an injury that these consumers could reasonably have avoided. After Defendant falsely represented the credit repair service included a money back guarantee, Plaintiff and FAL Class members suffered injury in fact due to Defendant's sale of the service to them.  Defendant failed to take reasonable steps to inform Plaintiff and class members that the credit repair service was not advertised as having the nature and quality that it in fact has. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the FAL Class members to purchase credit repair services that do not

include a money back guarantee. Therefore, the injury suffered by Plaintiff and members of the FAL Class is not an injury which these consumers could reasonably have avoided.

83.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

84.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

85.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

86.    Here, not only were Plaintiff and the FAL Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase the service under the basic assumption that it included a money back guarantee when in fact it was not. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

87.    As explained above, Defendant deceived Plaintiff and other FAL Class Members by representing the credit repair service included a money back guarantee when in reality this service contained no such provision, and thus falsely represented the credit repair service to consumers.

88.    Thus, Defendant's conduct has violated the "fraudulent" prong of

California Business & Professions Code § 17200.

## UNLAWFUL

89.     California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

90.     As explained above, Defendant deceived Plaintiff and other FAL Class Members by representing the credit repair service as being of a nature and quality different from what they actually were.

91.     Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and FAL Class members to purchase the credit repair service, in violation of California Business and Professions Code Section 17500, et seq.. Had Defendant not falsely advertised, marketed, or misrepresented the credit repair service, Plaintiff and FAL Class Members would not have purchased their service. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and FAL Class Members.

92.     This practice of making these representations by Defendant is therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq.

93.     Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and FAL Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**COUNT IV:**

**VIOLTATION OF THE FEDERAL CREDIT REPAIR**

**ORGANIZATION ACT**

**(15 U.S.C. § 1679 *et. seq.*)**

**-On Behalf of Plaintiff and the Credit Repair Organization Class-**

94.     Plaintiff incorporates by reference each allegation set forth above herein.

95.     The Federal Credit Repair Organizations Act was promulgated to combat "[c]ertain advertising and business practices of some companies engaged in the business of credit repair services [which] have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(a)(2) & (b).

96.     Defendant has both used an instrumentality of interstate commerce by advertising on television, radio, and internet video as well as used the mail provision and performance of its services to Plaintiff and the Consumer Repair Organization Class.

97.     Defendant failed to comply with a multitude of requirements and regulations as set forth in 15 U.S.C. § 1679 et. seq. with respect to Plaintiff and the Credit Repair Organization Class.

98.     15 U.S.C. § 1679(b)(b) prohibits a credit repair organization from charging or receiving any money or other valuable consideration for performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed. Defendant charged and required payment by Plaintiff and Credit Repair Organization Class members prior to beginning to provide any services in violation of this provision. Defendant's

contract required Plaintiff, under the contract, to pay an education fee of $297 prior to initiating or rendering any credit repair services for Plaintiff.

99.    Pursuant to 15 U.S.C. § 1679(f), any contract for services which do not comply with the provisions of 15 U.S.C. § 1679 is void and may not be enforced by any federal or state court or any other person.  Thus, Defendant's agreements with Plaintiffs and the Credit Repair Organization Class are void and Defendant may not collect on any amount promised under such agreements.

100.    Pursuant to 15 U.S.C. § 1679(g), Plaintiffs may and do seek actual damages in an amount the greater of the amount paid to Defendant or actual damages, reasonable attorney's fees and costs, and punitive damages on behalf of themselves and the Credit Repair Organization Class.

## COUNT V:

## VIOLATION OF CALIFORNIA CREDIT SERVICES ACT

### (Cal. Civ. C. 1789.11 et seq.)

### -On Behalf of Plaintiff and the Credit Repair Organization Class-

101.    Plaintiff incorporate by reference each allegation set forth above herein.

102.    The California Credit Services Act of 1984 was promulgated to combat "[c]ertain advertising and business practices of some credit services organizations have worked a financial hardship upon the people of this state, often those who are of limited economic means and inexperienced in credit matters." Cal. Civ. C. § 1789.11(a).   The act is to "be construed liberally to achieve these purposes." Cal. Civ. C. § 1789.11(c).

103.    Defendant failed to comply with a multitude of requirements and regulations as set forth in Cal. Civ. C. § 1789.11 et. seq. with respect to Plaintiff and the Credit Repair Organization Class.

104.   Cal. Civ. C. § 1789.13(a) prohibits a credit service organization from charging or receiving any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer. Defendant charged and required payment by Plaintiffs and Credit Repair Organization Class members prior to beginning to provide any services in violation of this provision by requiring payment of an education fee of $297 prior to initiating or rendering any credit repair services for Plaintiff and the Credit Repair Organization Class.

105.   Cal. Civ. C. § 1789.13(h) prohibits a credit repair organization from engaging, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit services organization. As described above, Defendant committed fraud and deceit upon Plaintiff and the Credit Repair Organization Class by misrepresenting its money back guarantee policy.

**106.**   Pursuant to Cal. Civ. C. § 1789.21(a), Plaintiff and the Credit Repair Organization Class may and do seek actual damages in an amount no less than the amount paid to Defendant, reasonable attorney's fees and costs, punitive damages, and injunctive relief on behalf of herself and the Credit Repair Organization Class.

## COUNT VI:

## VIOLTATION OF CAL CIV. CODE §§ 1670.8, ET SEQ.

### -On Behalf of Plaintiff Against Defendant-

107.   Plaintiff incorporates by reference each allegation set forth above herein.

108.   Cal. Civ. Code § 1670.8(a) states, it is unlawful to threaten with civil action or penalize a consumer for making a statement regarding the seller, its employees or agents, or goods and services of a consumer transaction.

109.   Defendant's violation was willful and knowing. As stated above,

Defendant contacted Plaintiff and demanded that she remove her review from Yelp, or Defendant would seek to penalize her by pursuing legal recourse against her. Such threat was not made in serious contemplation of litigation and was without a good faith belief in a legally viable claim, as Plaintiff's speech was protected under Cal. Civ. C. § 1670.8.

110.   As a direct and foreseeable result of Defendant's violations of Civil Code section 1670.8, Plaintiff was injured in that her free-speech rights under the United States Constitution and the California Constitution were impinged and was placed in fear of Defendant's threats of legal recourse, prompting her to seek representation to protect herself.

111.   Pursuant to Cal. Civ. Code §§ 1670.8, *et seq.*, Plaintiff may and do seek statutory damages, actual damages, reasonable attorney's fees and costs, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, SANDRA HENRY, individually, and on behalf of all others similarly situated, respectfully requests judgment be entered against Defendant, EZ CHOICE FINANCIAL CORP., for the following:

112.   That this action be certified as a class action on behalf of The Classes and Plaintiff be appointed as the representative of The Classes;

113.   An ordering requiring EZ CHOICE FINANCIAL CORP., at its own cost to notify all members of the Classes of the unlawful and deceptive conduct herein;

114.   An order requiring EZ CHOICE FINANCIAL CORP. to engage in corrective advertising regarding the conduct discussed above;

115.   An injunction requiring EZ COHICE FINANCIAL CORP. to cease its illegal activities;

116.    Statutory damages of $1,000.00, per EFTA Class Member, pursuant to the Electronic Fund Transfer Act, §916(a)(2)(A);

117.    Restitution and disgorgement of all money and profit paid by Plaintiff and the Credit Repair Organization Class and FAL Class to Defendant;

118.    Statutory damages of $10,000, pursuant to Cal. Civ. Code §1670.8;

119.    Actual damages;

120.    Punitive damages;

121.    All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

122.    For prejudgment interest at the legal rate; and

123.    Any other relief this Honorable Court deems appropriate.

## **TRIAL BY JURY**

124.    Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted this 23rd Day of April, 2018.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.


By:    /s/ Todd M. Friedman
          Todd M. Friedman
          Law Offices of Todd M. Friedman
          Attorney for Plaintiff